## OBTAINING MONEY UNDER FALSE PRETENSES FROM ONE ENGAGED IN AN UNLAWFUL BUSINESS.

Circuit Court of Cuyahoga County.

### NATHAN ZUCKERMAN v. STATE OF OHIO.

Decided, November 24, 1905.

*Criminal Law—That One Paying Money Under False Pretenses Was Engaged in Unlawful Business Not Material—That Representations as to Present Fact is Coupled with One as to Future Performance Immaterial—Evidence of Like Representations to Others Not Admissible.*

1. That the person from whom money was obtained by false pretenses was engaged in an unlawful business and that the money paid was for the purpose of securing immunity from police prosecution, is no defense to a criminal prosecution for obtaining the money by the false pretense that the defendant was an officer of the law.
2. In a criminal prosecution for obtaining money by false pretenses it is immaterial that the false representation as to an existing fact is coupled with a representation that the one making the representation will perform some service in the future.
3. Evidence that one accused of obtaining money by false representations, had made like representations to other persons from whom he had attempted to obtain money, is not admissible.

MARVIN, J. (orally) ; WINCH, J., and HENRY, J., concur.

Zuckerman was prosecuted in the police court of Cleveland under Section 7076, Revised Statutes, for obtaining money under false pretenses. He filed a petition in error in the court of common pleas, and upon hearing there the judgment of the police court was affirmed. Petition in error is filed here, seeking to reverse the judgment of the two lower courts. The affidavit upon which Zuckerman was prosecuted charged him with having obtained from one Fanny Weinstein $10; that she was about to engage in an unlawful nefarious business in this city, and that Zuckerman falsely represented to her that he was an officer, to-wit, a chief of detectives, and that he would be able to protect her from prosecution if she would pay him $25, and that she paid him $10 of that sum of $25, of which $5 was paid at the

time of the first conversation and $5 more on the next day; that Zuckerman was not such officer as he represented, and could not protect her.

It is urged, first, that it was not an offense for which Zuckerman could be prosecuted; that the representations were made to one who was seeking protection for the carrying on of an unlawful business, and that the obtaining money from such a one upon the representation that he could protect her would not be a violation of the statute, which reads: ''Whoever by any false pretense, with intent to defraud, obtains from any person anything of value,'' etc., ''shall, if the value of the property or instrument so procured, sold, bartered or disposed of, or offered to be sold, bartered or disposed of, is thirty-five dollars or more,'' and then follows the punishment.

We do not understand the law to be as claimed here. We understand that to obtain money by false pretense from one engaged in an unlawful business to be as much a crime as to obtain it from anybody else. One may not be relieved from prosecution for larceny because the party from whom he steals the money is himself a thief. One may not be relieved from the crime of murder because the one whom he killed was himself a murderer. The fact that this woman was engaged in an unlawful business and that she sought to be protected in that does not relieve Zuckerman from prosecution when he obtained money from her by the false representation that he was an officer. True, she could maintain no action against him to recover the money, but that does not determine whether a crime has been committed by him.

It is said, further, that this money was obtained for a thing to be done by Zuckerman in the future, to-wit, protect her from interference of the police in the carrying on of her unlawful business. But the evidence is that he represented at the time he talked with this woman, Fanny Weinstein, that he then and there was an officer and would be able to protect her, and in addition to that, that he would protect her. Is it to be said that because of the thing one says he will do and a part of the false representation that he made is that he will do something in the future, that that will relieve from crime when a part of the

thing that he says is then and there an existing fact when it is not? It seems to us that one might as well say that, if, on alighting from a train at the depot, one should come up and say, "That is my coach which stands there; you give me fifty cents and I will get your trunk and take it to the hotel," and you give him the fifty cents. It is true, you do so on the representation of two things. One is because he says "That is my coach" and the other is because he says "I will carry your trunk to your hotel." You give him the fifty cents on the representation that it is his carriage. These illustrations might be multiplied to show that where the representation is of an existing fact and one says he will do something in the future one is not relieved from prosecution.

We hold that the objection to the affidavit in either of the regards to which attention has been called is not sound.

A large number of objections were made to the introduction of evidence and exceptions taken to admissions of evidence. We do not stop to consider all of these, but we do stop to consider the ruling of the court upon the admission of certain testimony given by Fanny Grosstein and Edith Green. Each of these witnesses testified that she was engaged in the same nefarious business with the prosecuting witness and each was permitted to testify over the objection of the defendant that Zuckerman had solicited from her money and made the same representation to her which it is said he made to Weinstein.

It is insisted on the part of the defendant in error that, under the authority of *Tarbox* v. *State,* 38 O. S., 581, this was admissible. In that case the syllabus has on this subject only the following:

"3. Where in a trial upon an indictment it becomes material to prove, upon the part of the state, that a conspiracy existed between persons jointly indicted, evidence that the same persons were, shortly prior to the time of the alleged crime, engaged in a conspiracy to commit crimes of a like character, is competent."

The court, in speaking of that, says:

"Did the court err in admitting evidence of similar offenses by the same parties, shortly prior to this time in Detroit? We

think not. If admissible for any purpose there was no error in refusing to exclude it. We think it was competent for the purpose of showing a conspiracy between the defendants, and also to show knowledge of the falsity of the representations at the time when made. The court in its charge instructed the jury to consider it for no other purpose, and no exception was taken to the instruction.''

Upon the strength of that case it is urged that it was competent to show by Fanny Grosstein and Edith Green that Zuckerman had made the same false representations to them. It seems to us that it was clearly erroneous to admit that evidence. The ground upon which such evidence was admitted is to show knowledge of the one charged with crime that his pretenses were false, because it is necessary to show that one not only made false representations, but that he knew they were false at the time he made them, and that he made them for the purpose of deceiving. But here there was no occasion to introduce the testimony of anybody for the purpose of showing that Zuckerman knew it was false. If he made the representations, he knew they were false; there is no occasion to prove by anybody else that he knew they were false. If a woman such as Solomon speaks of, ''whose mouth is full of deceit and whose lips speak lies continually,'' thinks she can prop up her case by bringing in others of the same character to support what she says—that is passed upon in the case of *Barton* v. *State,* 18 Ohio, 221. Barton was tried for horse stealing. On the trial of the case the court held that it was error to permit evidence to go to the jury that just before defendant committed this crime he committed another larceny. On page 223 this language is used by the court:

''Another error assigned is the admission of evidence going to show that the defendant had committed a larceny the night previous to the day on which he is charged with committing this offense.

''This, we think, was clearly erroneous. It is never admissible to prove that a person has previously committed a crime of a similar character, to show that he committed the criminal act for which he is on trial; and although the court, in this instance, says that the evidence was only admitted for the purpose of

showing the intent with which the defendant got possession of the property, yet we do not see any connection between the two transactions, that would enable any legitimate conclusion to be drawn as to that fact. The only conclusion that we can see, that could be fairly drawn from the evidence, would be that the defendant intended to steal the horses and other property with which he was charged, because he was a thief, and had just before stolen a sum of money.''

In *Farrer* v. *State,* 2 O. S., 54, Farrer was prosecuted for administering poison to one whereby death resulted and the court permitted evidence that she had administered poison to other people, and put it upon the ground that it was admitted that she knew this was poison. The Supreme Court in discussing it, says, · page 74:

''The state is bound to prove the scienter, because money is so skilfully counterfeited, that there is no one who is liable to be deceived by it. No presumption whatever of guilty knowledge arises from the bare fact of passing a counterfeit coin or note, unless, which is but seldom the case, its baseness is apparent, and the person receiving it is a fit subject for imposition.

''But how is it with respect to the nature of arsenic? Is it not undeniable, that the fact is almost, or quite, as well known, to people generally, that arsenic is a deadly poison, as that a dagger, or a gun, is deadly weapon? I think it is,'' etc.

Then he says:

''The effect of such testimony is obvious. It comes upon the accused without any notice whatever; it finds him without any preparation to meet it, and unable, perhaps, from that very want of preparation, to rebut it, however innocent he may be; it convinces the jury that he was the poisoner in the particular case under consideration, though it was admitted for no such purpose; and this conviction, charge what the court may as to the proper effect of the testimony, hangs with a deadly weight upon the prisoner's defense.''

We think it was clearly erroneous to admit the testimony of those persons whose names have been given. For that reason the judgment is reversed and the case remanded.